## JOHN MARBLE *vs.* CITY OF WORCESTER.

If a horse, drawing a vehicle, though driven with due care, becomes frightened and excited by reason of the striking of the vehicle against a defect in the highway, frees himself from the control of his driver, turns, and at the distance of fifty rods from the defect knocks down a person on foot in the highway, who is using reasonable care, the city or town bound to keep the highway in repair are not responsible for the injury so occasioned, though no other cause intervene between the defect and the injury. THOMAS, J. dissenting.

ACTION OF TORT. Trial, by consent of parties, before *Thomas,* J., who made the following report thereof :

" This is an action of tort to recover damages alleged to have been sustained by the plaintiff, by reason of a defect in one of the highways in said city. The defect which was alleged, and which the evidence tended to show, was at the intersection of Salem and Front Streets, and consisted of a hole in the ice, which had been suffered to accumulate in the gutter, on the south side of Front Street, and at the foot of Salem Street. There was evidence introduced on both sides as to the existence of the defect, and this question of fact was argued to the jury.

" The evidence tended to show that a young man, with a horse and sleigh attached, undertook to drive through that part of the way where the defect was said to have existed ; that the horse went through, but the sleigh pitched into the hole, and threw the young man forward ; that the horse started up Front Street, whirled around, and threw the sleigh against a post on the north side of that street, threw the young man out, and went down Front Street, crossing over to the opposite or south side, where he left the sleigh, keeping however the thills and cross thills attached, went down the sidewalk some eight or ten rods, then passed into the street and Washington Square, [which is a continuation of Front Street,] and, at the distance of some fifty rods from the place of the defect, knocked down the plaintiff, (who was in the highway,) and did the injury for which the suit was brought. The questions, whether the young man was in the use of due care in driving, and the plaintiff being upon the highway, were submitted to the jury. The evidence tended to show that Front

Street was 'pretty clear' of carriages at the time, but that there were some small teams standing upon the street. There was no evidence however that the course of the horse was changed by them, other than the fact of their being there.

" The defendants contended that upon this evidence the action could not be maintained; that the injury was too remote, and was not the proximate consequence of the defect; and moved that a nonsuit be entered. But the presiding judge overruled the motion; and instructed the jury, for the purposes of the trial, that if the horse, by reason of the defect in the highway, became frightened and excited, and under that fright and excitement, freeing himself from the control of the driver, passed down Front Street and knocked down the plaintiff, and did him bodily injury, for such injury, in the absence of any intervening cause to change the course of the animal, or to give him a new impulse, or to increase his violence, the city would be liable. The jury returned a verdict for the plaintiff. If the ruling was correct, there is to be judgment on the verdict; if otherwise, a new trial is to be granted."

The arguments were had at September term 1854.

*D. Foster,* (*P. C. Bacon* with him,) for the defendants, cited *Mower* v. *Leicester,* 9 Mass. 247; Rev. Sts. c. 25, § 22; *St.* 1850, c. 5; *Tisdale* v. *Norton,* 8 Met. 391; *Palmer* v. *Andover,* 2 Cush. 604; *Harwood* v. *Lowell,* 4 Cush. 310; *Shepardson* v. *Colerain,* 13 Met. 55; *Brailey* v. *Southborough,* 6 Cush. 141; *Canning* v. *Williamstown,* 1 Cush. 451.

*C. Allen & H. C. Rice,* for the plaintiff, cited *St.* 1850, c. 5; *Scott* v. *Shepherd,* 2 W. Bl. 892; *Illidge* v. *Goodwin,* 5 Car. & P. 190; *Lynch* v. *Nurdin,* 1 Ad. & El. N. R. 29; *Powell* v. *Devrney,* 3 Cush. 300; *Vandenburgh* v. *Truax,* 4 Denio, 464.

SHAW, C. J.* This is an action brought against the city to recover damage for an injury to the plaintiff's person, alleged to have occurred by reason of a defect in one of the highways of the city, which they were bound to maintain in a condition safe and convenient for travellers. The action is founded

---

* MERRICK, J. did not sit in this case.

upon the provisions of *St.* 1850, *c.* 5, which are as follows .
" If any person shall receive or suffer any bodily injury, or any
damage in his property, through any defect or want of repair,
or of sufficient railing, in or upon any highway, town way,
causeway or bridge, he may recover, in a ·special action of the
case, of the county, town or persons who are by law obliged to
repair the same, the amount of damage sustained thereby."

This is substantially like the previous provision. Rev. Sts.
*c.* 25, § 22. There is a slight change in the phraseology, not
probably affecting the meaning ; the words being, in the revised
statutes, " If any person shall receive any injury, in his person
or property, *by reason* of any defect or want of repair." The
provision in the revised statutes was taken with little variation
from *St.* 1786, *c.* 81, § 7 ; and that again from the provincial act
of 1693, (Anc. Chart. 269,) except that these specify the kind
of damage to be compensated for. We suppose that these slight
variations in terms—damage " through any defect," " by reason
of any defect," " caused thereby," that is, " by any defect"—are
all intended to express the same meaning, so that the judicial
construction which has been put upon these statutes may prop-
erly be resorted to, in expounding the more recent one.

The general rule of law, we understand, is, that where two or
more causes concur to produce an effect, and it cannot be deter-
mined which contributed most largely, or whether, without the
concurrence of both, it would have happened at all, and a par-
ticular party is responsible only for the consequences of one of
these causes, a recovery cannot be had, because it cannot be
judicially determined that the damage would have been done
without such concurrence, so that it cannot be attributed to that
cause for which he is answerable.

The rule, *In jure, causa proxima, non remota, spectatur*, is of
very general application in the law ; and although more fre-
quently noticed and illustrated in the law of insurance, yet it is
equally applied to other cases of like kind.

The whole doctrine of causation, considered in itself meta-
physically, is of profound difficulty, even if it may not be said
of mystery. It was a maxim, we believe, of the schoolmen,

" *Causa causantis, causa est causati.*" And this makes the chain of causation, by successive links, endless. And this perhaps, in a certain sense, is true. Perhaps no event can occur, which may be considered as insulated and independent; every event is itself the effect of some cause or combination of causes, and in its turn becomes the cause of many ensuing consequences, more or less immediate or remote. The law however looks to a practical rule, adapted to the rights and duties of all persons in society, in the common and ordinary concerns of actual and real life; and on account of the difficulty in unravelling a combination of causes, and of tracing each result, as a matter of fact, to its true, real and efficient cause, the law has adopted the rule before stated, of regarding the proximate, and not the remote cause of the occurrence which is the subject of inquiry.

It may be proper, the better to understand this distinction between a remote and proximate cause, where both concur, to take an illustration; and this may be most readily found in the law of insurance. The rule is accurately stated by a very cautious judge, Mr. Justice Sewall, in the case of *Delano* v. *Bedford Marine Ins. Co.* 10 Mass. 354. The vessel insured for a foreign voyage had been detained three months by an embargo, in the port of Savannah; but a clause in the policy prohibited the assured from abandoning for detention within six months; and so the court held this detention to be a peril for which the insurers were not liable. Within six months, war was declared, and the voyage was lost. In delivering the opinion, the learned judge says: " If the Emulous had been stranded and wrecked in the port of Savannah, while detained there under the embargo, the insurers would have been liable for the loss, but not upon the averment of a loss by detention ; although it might be argued [and it would be strictly true] that it [the loss by shipwreck] was entirely the consequence of the detention, and that, but for the embargo, the peril by which the ship had been lost [namely, shipwrecked] would not have been incurred." He then states the general rule: " In every question of loss demanded upon a policy of insurance, it is the immediate and direct, not the remote or contingent cause of the loss, which is to be regarded in stating

and maintaining the title of the assured to recover upon the contract."

We will cite one English case to the same effect, because it fully illustrates the maxim relied on; *Livie* v. *Janson*, 12 East, 648. It was an insurance made in England, during the American embargo, on ship and cargo, from New York to London, warranted free from American condemnation. In sailing out of New York, she was damaged by perils of the sea, stranded and wrecked on Governor's Island, and there seized by the American government, and condemned, for a violation of the embargo. The court held that the insurers were not liable. Detention and capture by the American government were risks excepted out of the policy, and they were the proximate cause of loss; though it was conceded that the vessel was brought into a condition to be so seized and condemned, by a peril insured against, and, but for these perils of the sea, the vessel would not have been seized, and so not lost, so that the perils of the sea were one of the actual causes of loss, without which it would not have occurred, yet, being a remote and not the immediate cause, the underwriters were not liable. And in delivering the opinion of the court, Lord Ellenborough puts this illustration : " If, for instance, a ship meets with sea damage, which checks her rate of sailing, so that she is taken by an enemy from whom she would otherwise have escaped; though she would have arrived safe but for the sea damage, the loss is to be ascribed to the capture, not to the sea damage ; and this upon the principle that *causa proxima, non remota, spectatur.*"

This last illustration suggests another consideration, which is this: Suppose, in the case last stated, the ship-owner had obtained of one party a policy against capture only, excluding perils of the sea ; and another of another party, against perils of the sea only ; it is very clear, we suppose, that the insurer against capture and detention, and not the insurer against perils of the sea, would be liable for the loss. And yet it can make no difference, in deciding the claim upon the insurer against perils of the sea, whether the ship-owner has another policy against capture or not; if he has not, he stands that risk himself, and it can

form no element in enhancing his claim upon the insurer against perils of the sea. Such decision therefore against the assured does not depend on the consideration whether he has another insurance, but is founded solely upon the rule that he is liable only for the direct and immediate effects of the particular perils of which he has assumed the risk.

We have taken this general rule of law from the law of insurance, because it has there most frequently occurred, and because the rule, and the reasons of policy and justice on which it is founded, are there more accurately stated and illustrated, with the distinctions and modifications under which it is applied.

But the same rule is applied in various other cases, and especially to the class of cases in which towns are held liable for damages to person or property, by reason of any defect of a highway. The ground is, as towns are liable by force of the statute only, it is held as a true construction of the statute, that if other causes concur with the defect, and it is impossible to ascertain, as a fact, which cause contributed mainly to the effect, it cannot be judicially determined that the particular damage occurred " by reason of" the defect, within the meaning of the statute.

In the case of *Tisdale* v. *Norton*, 8 Met. 388, the highway was plainly defective by being overflowed, to avoid which the plaintiffs went out of the way into an adjoining lot, and there sustained the injury complained of. They obtained a verdict at *nisi prius*, which was set aside by this court. The court, in pursuing the inquiry whether the injury was attributable to any defect or want of repair in the highway, say : " In one sense, as a remote cause, it may be said to be so, inasmuch as the defect in the highway was doubtless the occasion of the plaintiffs' attempting to travel, without the limits of the highway, over the adjacent lot. But the proximate, not the remote cause, is that which is referred to in the statute."

So a similar rule was laid down in an analogous case in England, for damage against a party who had illegally obstructed the highway by laying rubbish therein, by means of which the plaintiff's horse was frightened, and ran away towards another

heap of rubbish, placed in the street by a third party. The marginal note is this : " If the proximate cause of damage be the plaintiff's unskilfulness, although the primary cause be the misfeasance of the defendant, he cannot recover, at least if the mischief be in part occasioned by the misfeasance of a third person, not sued." *Flower* v. *Adam*, 2 Taunt. 314.

But to come back to cases on our own statute, we think the case of *May* v. *Princeton*, 11 Met. 442, throws light on the subject. It was an action on the statute, alleging a defect in the highway, by reason of its being blocked up and obstructed by snow ; that the plaintiff was travelling on the highway with his team, and by reason of the defects and want of repair aforesaid, one of his horses was wounded and injured. At the trial, the plaintiff offered evidence to prove that he was travelling in a proper manner, and in the exercise of due care and diligence ; and it was objected to, because there was no averment to that effect in the declaration. It was admitted, and the objection came before this court, and was fully argued. It is clearly established that, in this class of cases, this fact must be proved, and that the burden is on the plaintiffs. *Adams* v. *Carlisle*, 21 Pick. 146, and many others. But the objection was overruled, and the declaration held sufficient to admit this proof, because, in legal effect, the averment, that the injury was done " by reason of" the defects in the highway, negatived any other cause, and was equivalent to averring that there was no other cause, arising from the negligence of the plaintiff, from accident, or otherwise, which would excuse the town from their responsibility. The court say : " To maintain this action, the plaintiff is bound to prove affirmatively, not only that the highway was defective, but that his loss was caused by that defect. The *per quod* [*i. e.* by means whereof] is of the essence of the charge, and must be strictly proved. Though the highway be ever so defective, if the plaintiff has suffered no loss *by reason* of such defect, he has no cause of action."

These cases seem to establish the principle, that upon the true construction of the statute, the town are responsible only for the direct and immediate loss occasioned by a defect in the high-

way ; and it follows as a consequence, that if that damage arises from a more remote cause, or from any efficient concurring cause, without which it would not have happened, or from pure accident, in either case it is not a loss for which the town are responsible. It is no argument against this conclusion, that if the town are not liable in such case, a suffering party is without remedy; the loss must fall within the same category with the infinite number of cases where persons sustain great losses from pure accidents and misfortunes, for which no person is responsible, and where the loss must finally rest where it first falls.

Although this rule of regarding the proximate cause, in tracing a specified damage to a particular event, for which and for which alone a defendant is responsible, is plain and intelligible, yet the application of it, in various combinations of facts, which may exist and be in proof, is often one of great difficulty, intrinsic and unavoidable. Cases may approach so near the line of distinction as to render it very doubtful on which side the particular case falls.

With these views of the law, we are called on to consider the present case, as it appears upon the report. Two circumstances appear to us to be peculiar, and which distinguish this from the cases of this kind usually brought before us. The first is, the remoteness and distance between the alleged defect in the highway and the place where the injury is stated to have been done to the person of the plaintiff. The second is, the entire want of connection of the plaintiff with the horse and sleigh and the accident which happened to them, by means of an accumulation of ice in the junction of two distinct streets, and the hole in that ice.

The first impression made by the report on our minds was, that the alleged cause of the injury was too remote from the alleged defect; in other words, there was too wide a difference, both in distance and causation, between the alleged defect—consisting of a hole in the ice, which caused the sleigh to pitch, and frightened the horse after he had passed over it safely—and the hitting of the plaintiff by the runaway horse, at fifty rods distant, to warrant the conclusion that the defect was the proximate cause of that injury

We are not prepared to say that a plaintiff in such an action may not establish his case, and recover damage, though he had no connection with the horse or carriage passing on a defective highway; as where there is a dangerous hole in the pavement near the sidewalk, a carriage passing falls in and is overturned by it, and falls on a passenger on the sidewalk, who is thereby hurt. But there the connection between the defect and its consequence would be so plain, immediate and direct, that the one might be reasonably attributed to the other.

So mere distance of place between the existence of the defect and the damage, might not be sufficient to prevent a plaintiff from recovering; as if, for instance, a man is riding in a sleigh or carriage, and meets with an accident caused by a defect in the highway, a horse of ordinary steadiness is frightened, and, by a sudden start, the reins are broken, or twitched from the driver's hands, and he then runs fifty rods, turns off from the road, the carriage is overturned, and the owner thrown and injured. There again, notwithstanding the distance of place between the defect and the injury, it might be properly found that such defect was the direct and proximate cause of such loss, because the connection in causation might be reasonably proved.

But in the present case, both of these circumstances occur; the plaintiff was a stranger to all connection with the horse and sleigh, the driving, and all circumstances of the accident; and also at a great distance from the place of the defect. In this respect, we think this case is peculiar, and without precedent.

Upon this general and summary view of the case, the court were inclined to the opinion that the damage to the plaintiff was too remote to come within the rule of proximate cause. And this opinion is not changed upon a closer examination of the facts. The defect was alleged to consist in a hole in the ice, which had been suffered to accumulate in the gutter on the south side of Front Street, and at the foot of Salem Street. This was submitted to the jury upon instructions to which no objection is made; and their finding affirms the existence of such defect. It is not stated in which direction the young man was driving, or whether he had occasion to turn from one street

into the other, and thus cross the gutter. A brief statement of the evidence is, that the horse went through, but the sleigh pitched into the hole and threw the young man forward; that the horse started up Front Street, whirled round, dashed the sleigh against a post, broke it, and threw the young man out; the horse then ran, with the thills attached, down the street and Washington Square, and, at the distance of fifty rods, struck the plaintiff and did the injury complained of.

It is stated that the plaintiff was in the highway, using due care, when he was struck. We cannot perceive that this makes any difference. No defect was alleged in the highway he was using; and if, when the horse was furiously running away, the town were responsible for all the damage he might occasion to persons and property, until stopped, in consequence of what had previously occurred in another street, we do not perceive that it can make any difference where that damage was suffered by the plaintiff, on the road, or standing within his own door on his own premises, or passing over a field, the private property of another, or even in another town.

It is also stated that it was left to the jury to find whether the young man driving the sleigh was in the use of due care in driving. If by this is understood that the question submitted was, not only whether he was using due care and skill in guiding and directing the horse, but also whether he used due care in looking out for defects in the road and in avoiding them, that fact must be considered as determined in favor of the plaintiff; otherwise it would be open to the objection that, although there be a defect, if it be open and visible, and could have been avoided, then the loss is not attributable to the defect alone. *Reed* v. *Northfield*, 13 Pick. 94. Perhaps a fair construction of the report shows that this latter branch of the question of due care was sufficiently presented to the jury, so that the verdict affirmed due care in both respects; and if so, this would be no ground for setting it aside.

The evidence tended to show that Front Street was pretty clear of carriages at the time, but there were some small teams standing upon the street. There was no evidence, however, that

the course of the horse was changed by them, other than the fact of their being there. Upon this evidence, the defendants insisted that the injury was too remote, and not the proximate consequence of the defect, and moved for a nonsuit. This motion was overruled; but the refusal of a judge to order a nonsuit, or to express an opinion upon the facts in that stage of the trial, is no ground of exception.

Several cases have been cited by the plaintiff, as having a bearing upon his case. *Scott* v. *Shepherd,* 2 W. Bl. 892, is the well known case of one throwing a lighted squib into a crowd, which was knocked from hand to hand until it hit the plaintiff in the face and exploded, and the defendant was held liable in trespass. But there the act itself was unlawful, dangerous, and, as relied on by some of the judges, wilful; at all events, it was wanton and reckless, tending to cause injury, and, under the maxim that every man shall be presumed to intend the natural and probable consequences of his own acts, intentional. And in that case the point mainly discussed was the old vexed question whether the form of action should be trespass or case.

In the case of *Illidge* v. *Goodwin,* 5 Car. & P. 190, the question was whether the defendant's servant was guilty of negligence in leaving his cart unattended in the streets of London, rather than whether the damage to the plaintiff's window was caused by it. And *Lynch* v. *Nurdin,* 1 Ad. & El. N. R. 29, and 4 P. & Dav. 672, was somewhat similar. There a cart was left alone in a crowded street, a long time, and while the plaintiff, an infant of seven years and other children, were amusing themselves with the deserted horse and cart, and climbing into and out of it, the horse was started and the plaintiff injured. The court having considered that, as the plaintiff was an infant, without discretion to govern his own conduct, he could not be said to have contributed to his own injury, so as to bar his claim, it was therefore a question whether, under the circumstances, the defendant's servant had been guilty of negligence in leaving his cart thus, to tempt children to indulge their natural propensities. Lord Denman, in giving the opinion of the court, says : " It is then a matter strictly within the province of a jury, decid-

ing on the circumstances of each case. They would naturally inquire whether the horse was vicious or steady; whether the occasion required the servant to be so long absent from his charge, and whether in that case no assistance could have been procured to watch the horse; whether the street was at that hour likely to be clear, or thronged with a noisy multitude; especially whether large parties of young children might be reasonably expected to resort to the spot. If this last mentioned fact were probable, it would be hard to say that a case of gross negligence was not fully established." 1 Ad. & El. N. R. 38, and 4 P. & Dav. 678.

We think none of the authorities cited have any very direct bearing upon the question before us, so peculiar in its circumstances. Upon the best consideration which we have been able to give the subject, a majority of the court are of opinion, that our first impressions were correct; that there was no such connection between the alleged defect by the accumulation of ice, in one street, and the damage sustained by the plaintiff in another and distant street, by the accidental movements of the runaway horse, that the one must be considered as the necessary, natural or direct cause of the other; that it is rather to be regarded as one of those accidents for which a town or city is not responsible, and that a new trial of the case ought to be had.

THOMAS, J. After a careful consideration of this case, I am unable to concur in the opinion pronounced by a majority of the court. I will state therefore, as briefly as I may, the reasons which have led me to the conclusion that judgment should be entered on the verdict for the plaintiff.

That there was the highway alleged which the city was bound to keep in repair; that it was defective; that of the defect the city had notice; that the young man having charge of the horse and sleigh used due care; that the plaintiff was rightfully in the highway, and in the exercise of reasonable care; and that while so upon the highway he received a bodily injury, are facts settled by the verdict of the jury.

The only question is, whether that injury was received or suffered " through " the defect. *St.* 1850, *c.* 5, § 1. The language

of the Rev. Sts. *c.* 25, § 22, is, " by reason of" the defect. These provisions mean the same thing.

That the plaintiff's injury can be traced to the defect in the highway ; that the defect was a near antecedent of, and the fact without which the injury would not have been received, seem to be quite plain.

Ordinarily, having shown the existence of the highway, and that the town was bound to keep it in repair, a defect in the way of which the town had due notice, the exercise of reasonable care in all respects by the plaintiff, and the receiving or suffering of a bodily injury which he would not have received or suffered but for the defect, the liability of the town to respond in damages would seem to follow.

The ground of defence in this case is, that the injury which the plaintiff sustained was not the direct and proximate result of the defect in the way, or, to reverse the proposition, that the defect was not the proximate cause of the injury.

This seems to me a question of fact, rather than of law. It is for the jury to determine, under all the facts of the case, whether the defect is or is not the cause of the injury. *Powell* v. *Deveney,* 3 Cush. 300. *Lynch* v. *Nurdin,* 1 Ad. & El. N. R. 29, and 4 P. & Dav. 672. But whether a question of fact, or, the facts being found, a question of law, the verdict seems to me right.

The words of the statute are broad and comprehensive : " If any person shall receive or suffer any bodily injury through any defect or want of repair, he may recover the amount of damage sustained thereby." *St.* 1850, *c.* 5, § 1. There is nothing in this, or the preceding statutes upon the subject, to limit the right to recover damages for injuries so sustained to persons in a vehicle upset or overturned by a defect in the highway ; nor has any case arisen in which such limitation has been adopted or suggested. If one were walking upon the sidewalk of one of the streets of the city, and, by a defect in the way near the walk, an omnibus were upset and thrown upon him, his injury would be received or suffered through or by reason of the defect, as clearly as if he was riding within or upon the omnibus. It is

not therefore because the plaintiff was not in the sleigh that he cannot recover.

Nor can it well be the distance of the place of the injury from the place of the defect. Upon the question of fact whether the defect was the cause of the injury, distance of time or place between the two would be a material, though by no means a controlling consideration. If the young man in the sleigh had been carried fifty rods, and then thrown out and injured, no question of the liability of the city could have been raised. With a horse frightened by the defect, and rendered wholly unmanageable, it would have been of little moment to have objected that the horse ran with violence some fifty rods before he dashed the sleigh against a post and threw the driver out. Nor would the suggestion that the horse so running might have been diverted from his course by some carriage or other object on the street, and, if not so diverted, might by possibility have got safely through, be made with much effect. In this case, the distance which the horse ran was little over an eighth of a mile, and the intervening time could scarcely have exceeded half a minute. But the distance would, I think, be immaterial so long as we can clearly see that the first cause is still in operation. It is only material as it tends to show that the first cause is no longer in activity.

I confess I have not been able fully to understand upon what ground it is said that the defect was not the proximate cause of the injury. The fact is indeed found that there were some small teams standing upon the street. There was no evidence, however, that the course of the horse was changed by them, other than the fact of their being there. But suppose it had been otherwise; that it had been shown that a horse, startled by a defect in a highway, freeing himself from the control of his driver, and running with great rapidity and violence through a crowded street, had been diverted, by objects usually found upon the street, from one side to the other, and, running this zigzag course, had struck upon a curbstone and thrown the driver out, could it be said that the object apparently causing such diversion of the animal from his course was the cause of the injury, and

not that which first startled and set him in motion and caused the driver to lose all control over him ? Is it not plain that such diversion is merely incidental, and that that was the true cause of the injury, which set in motion an agency or force without discretion or intelligence ?

The familiar maxim, *In jure, causa proxima, non remota, spectatur*, seems to me to have no application to this case. Upon the facts found, there is here no concurrence of two or more causes, requiring the application of this rule to determine which is the true legal cause. The facts show no concurrence or conflict of causes. They show but one cause. Of this maxim, rightly understood and carefully limited, there is perhaps no reason to complain. But, as used, it oftener misleads, than aids the inquirer. It is a maxim applied in practice almost exclusively to the law of marine insurance, and by no means of universal application there. See cases stated in 2 Arnould on Ins. § 284 ; 1 Phil. Ins. § 1132 ; *Peters* v. *Warren Ins. Co.* 14 Pet. 99 ; *Hazard* v. *New England Marine Ins. Co.* 1 Sumner, 218; *Nelson* v. *Suffolk Ins. Co.* 8 Cush. 477 ; Broom's Max. 166 *& seq.* If taken in what was apparently its original and literal meaning, that, in case of doubt to which of two causes an injury or loss is to be assigned, you are to attribute it to that nearest in time or space, or which was in activity at the moment of the consummation of the injury or loss, the maxim is not only logically unsound, but opposed to the general current of the authorities.

There is doubtless a tendency of the mind, but one to be carefully guarded against, to associate the idea of causation with the nearest antecedent event. But in determining what is the true cause of a given result, where two or more causes seem to conspire, the reasonable inquiry, I submit, is not which is nearest in place or time, but whether one is not the efficient, procuring cause, and the others but incidental. In other words, we are to seek the efficient, predominating cause, and not merely that which was in activity at the consummation of the accident or loss.

A very familiar illustration may be found in the case of insur-

ance against fire. The property may be destroyed immediately by the water used to extinguish the fire; it may be injured by the removal, or stolen by reason of the exposure which the fire has rendered unavoidable. Yet the fire is the efficient, procuring cause of the loss of the property, and the others merely incidental.

The case of *Siordet* v. *Hall*, 4 Bing. 607, furnishes another apt illustration. There damage was done to a cargo by water escaping through the pipe of a steam-boiler, in consequence of the pipe having been cracked by frost. Negligence was shown in the captain, in filling the boiler some hours before it was necessary to heat it. It was contended that the loss was by an act of God, that the frost was the proximate cause. But the court rightly held, that the true legal cause was the negligence of the captain, in filling the boiler before it was necessary.

In a recent case in the Exchequer, a vessel, laden with hides and tobacco, in the course of her voyage shipped large quantities of sea water. On the termination of the voyage, it was discovered that the sea water had rendered the hides putrid, and that the putrefaction of the hides had imparted an ill flavor to the tobacco and had thereby injured it. The sea water was held to be the proximate cause of the loss, and the insurers liable. *Montoya* v. *London Assurance Co.* 6 Exch. 451.

In *Davis* v. *Garrett*, 6 Bing. 716, the plaintiff put lime on board the defendant's barge, to be conveyed from London to Medway. The master of the barge deviated unnecessarily from the usual course, and during the deviation a tempest wet the lime, and, the cargo taking fire thereby, the whole was lost. It was held the deviation was the true cause of the loss.

In the case of *Lynch* v. *Nurdin*, cited above, the defendant negligently left his horse and cart unattended in the street. The plaintiff, a child seven years old, got upon the cart in play. Another child incautiously led the horse on, and the plaintiff was thereby thrown down and hurt. The defendant was held to be liable.

In the case of *Powell* v. *Deveney*, in this court, 3 Cush. 300, the defendant's servant left his cart at the side of the street, near

the curbstone, with the shafts shored up by a plank. Another person left a cart nearly opposite. A truckman, passing with a truck between, struck the defendant's truck, so that the shafts were thrown off the plank, whirled round upon the sidewalk on which the plaintiff was passing and knocked down the plaintiff, and broke her leg. The defendant was held liable for the injury. The placing of the cart opposite the defendant's, and the passing of the truck between and striking the defendant's cart were nearer causes, and causes without which the accident would not have happened; but they were not the predominant, efficient causes, and so not the legal causes.

In the case of *Ingalls* v. *Bills*, 9 Met. 1, it was held that where a passenger in a coach, by reason of a peril arising from an accident for which the proprietor was liable, leaped from the coach and thereby broke a limb, the proprietor was liable, though the passenger might have safely retained his seat, if the leaping from the coach was, under the circumstances, a reasonable precaution. Yet such leaping was clearly the proximate, though not the efficient cause of his injury.

See also *Illidge* v. *Goodwin*, 5 Car. & P. 190; *Scott* v. *Shepherd*, 2 W. Bl. 892; *Vandenburgh* v. *Truax*, 4 Denio, 464.

So also in the law of marine insurance, to which in practice the rule of *causa proxima* has been chiefly applied, it will be found that the proximate cause has been construed to mean the efficient substantive cause, whether in activity or not at the time of the loss. See the very able opinion of Mr. Justice Story in *Peters* v. *Warren Ins. Co.*, and the clear and satisfactory statement of the result of the authorities, by Mr. Phillips. 2 Phil. Ins. §§ 1097, 1131, 1132.

Lord Bacon, in interpreting this maxim, says: " It were infinite for the law to consider the causes of causes, and their impulsion of each other; therefore it contenteth itself with the immediate cause, and judgeth of acts by that, without looking to any farther degree." Maxims of Law, 1. The law indeed is not to inquire into the causes of causes, but it is anxiously to inquire for the true cause, and to distinguish between the cause and that which is ordinarily incidental to it. Some idea of what

Lord Bacon means is furnished by the first case which he gives in illustration. An annuity was granted *pro consilio impenso et impendendo.* The grantee was committed for treason, so that the grantor could not have access to him for counsel. It was held that the annuity was not determined, the involuntary, compulsory imprisonment being a sufficient excuse, into the cause of which the law would not inquire.

So a familiar illustration may be found in an indictment for homicide, where the defence is insanity. If the insanity be shown, the law will not inquire as to the cause of the insanity, to show that it had its origin in the misconduct of the defendant.

So if a building insured were destroyed by fire resulting from the negligence of the owner's servants, it would not be competent to show that their habits of negligence were the result of the inattention and lax discipline of the master.

That is to say, a distinct substantive cause being shown, the law will not go behind it and inquire as to its cause. It does not " consider the causes of causes." And this is the meaning and the extent of meaning of this familiar maxim of *causa proxima.* It is certainly true, that it is not always easy to determine what is the efficient, procuring cause. But the difficulty is not in the rule, but because our conclusions are drawn always with imperfect instruments, and often from an imperfect view of the facts. It is also true that, philosophically, we know little of the relation of cause and effect. But it is equally true that, in all the highest practical affairs of life, we recognize and act upon this relation; and that, when so acting, we seek the true, efficient, procuring cause, and not that nearest in point of time or space.

The rule, as a practical one, may be thus stated : Having discovered an efficient, adequate cause, that is to be deemed the true cause, unless some new cause, not incidental to, but independent of the first, shall be found to intervene between it and the result.

This was substantially the rule given to the jury. They were instructed that if the horse, by reason of the defect in the highway, became frightened and excited, and, under that fright and

excitement, freeing himself from the control of the driver, passed down the street, and knocked down the plaintiff and did him bodily injury; for such injury, in the absence of any intervening cause to change the course of the animal, or give him a new impulse or increase his violence, the city would be liable. These instructions seem to me, to say the least, sufficiently favorable to the defendants.

Under these instructions, the jury must have found, first, that the defect was an adequate, efficient cause of the injury; and, secondly, that no other cause intervened between it and the result. It seems to me, therefore, with great deference, that this is not a case where we are called upon to determine which of two causes, apparently conspiring to a result, was the true cause; for but one cause is disclosed upon the facts, and the jury have found, as matter of fact, that the defect was that cause.

The case of *Tisdale* v. *Norton*, 8 Met. 388, relied upon by the defendants, does not strongly resemble the case at bar. The defect in the way, in that case, was a gully, caused by a freshet, some three and a half rods wide, and through which the waters of a pond, by the side of the road, flowed to a depth of from ten to fifteen feet. The plaintiffs, before coming to the gully, turned off from the road to avoid the defect and continue their journey. By reason of a hole in the bottom of the pond the plaintiffs' wagon was upset, and the plaintiffs thrown into the pond. It is quite plain that the cause of the injury was not the defect in the way, but the hole in the pond. The plaintiffs never reached the defective way. The defect in the way induced them to forbear travelling upon it; and, having turned from it, the efficient cause of the injury occurred.

None of the other cases cited by the learned counsel for the defendants seem to me at all in conflict with the instructions given to the jury.

It was suggested at the argument that such construction of the statute would greatly increase the burden of the towns. If it be the true construction, it imposes upon them no other or greater burden than the legislature intended they should bear. The case seems to be within the fair scope and spirit of the

statute.  The plaintiff was without fault.  The defendants were guilty of a neglect of legal duty.  By reason of that neglect, the plaintiff sustained a severe injury.  It is not at all grievous that the city should compensate him for that injury.

For the reasons thus imperfectly stated, and with great distrust of my own judgment when it differs from that of my brethren, I am of opinion that judgment should be entered on the verdict for the plaintiff.

*New trial ordered.*