Powers v. The People.

## La Fayette Powers

v.

## The People of the State of Illinois.

*Criminal Law—Assault with Deadly Weapon—Evidence—Instructions.*

1. An owner of personal property may oppose force with force to prevent the same being injured and destroyed, but not to the extent of taking life, or in excess of the necessity of the case. If he carries resistance to excess, or uses more force than is necessary, he becomes a wrongdoer.
2. The jury were justified in the case presented in regarding the assertion

of the defendant that he was only endeavoring to frighten the plaintiff in discharging his pistol, as a mere subterfuge by which he hoped to avoid a conviction.

3. Proof as to what passed between such defendant and a person who, at the time of the shooting, was endeavoring to prevent the same, should be admitted as part of the *res gestœ* in proceedings instituted by the person shot at.

4. This court holds, in view of the evidence, that defendant was actuated in making the assault in question more by rage than by any real desire to protect property in his charge from a trespasser.

5. The suggestion that the word " at " means " toward, in, or near by," and that an instruction stating that the attempted removal of certain property did not justify a party named in shooting " at " the party so removing, with a revolver, if the evidence shows that he did shoot at him, tells the jury that the person shooting would not have been justified in so doing " toward or near by" such person, even though the intent was only to frighten him, is hypercritical, and wholly frivolous.

6. The objection that an instruction improperly defines the legal meaning of the word " malice " should not be raised, where malice is not an ingredient of the crime of which the jury found a given person guilty. In such case such instruction, though given, can do no harm. In view of the evidence in the case presented, it is held that the fine of $300 imposed upon defendant can not be considered excessive.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Mason County; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. MORRISON & WHITLOCK and E. A. WALLACE, for appellant.

Messrs. W. R. CURRAN and JOHN W. PITMAN, State's Attorney, for appellees.

BOGGS, J. At the February term, 1891, of the Mason Circuit Court, upon an indictment charging him with an assault with a revolver upon one James R. Barker, with intent to commit murder, the appellant was adjudged guilty of an assault with a deadly weapon with intent to inflict a bodily injury, without any considerable provocation, and sentenced to pay a fine of $300 and the costs of the prosecution.

He brings the record here for review and assigns for error:

1.  The court erred in overruling the motion for a new trial.

2.  The court erred in rendering a judgment on the verdict of the jury.

3.  The verdict of the jury is against the law and the evidence.

4.  The court erred in giving instructions for the people and refusing instructions for the defendant.

5.  The court erred in admitting improper evidence for the people and in excluding proper evidence for the defendant.

That the appellant, on the occasion in question, fired three shots from his revolver toward and in the direction of Barker, is conceded. It was the testimony of the appellant, and is the contention of his counsel, that the shots were not fired with an intent to hit or injure Barker but only to frighten him and cause him to desist from trespassing upon property then in the lawful custody of the appellant. In the briefs of counsel for the appellant it is said that the only substantial controversy of fact is as to the intention with which the appellant fired the shots.

This, then, may properly first have our attention. It is clearly shown from uncontradicted testimony that Barker, the prosecuting witness, was determined to unload and remove a carload of lumber that was in the custody of the appellant as agent of the Wabash Railway Company, and that the appellant was equally determined that he should not do so. It is also clearly shown that they were in an altercation about the lumber and were both angry. The appellant ordered Barker not to take the lumber. Barker replied that he would take it and went upon the car and began to unload it. The appellant became greatly enraged, ran into his office, got a revolver and rushing near to the car, said: "Stop throwing off that lumber or I'll kill you." Barker did not stop, and the appellant pointed the revolver at him and fired and almost immediately fired a second shot. Barker threw a piece of scantling at the appellant, who said "Get off that car, G—d d—n you, or I'll

kill you," and supporting his right hand in which he held the revolver with his left, he almost instantly fired a third shot at Barker. At this moment, Tomlinson, one of the witnesses, came running to appellant, and said : " Put up that pistol or I'll have you arrested," whereupon the appellant turned the pistol upon Tomlinson, and with an oath threatened to blow his brains out. Barker then left the car, and the appellant ceased firing. No one was struck by any of the shots.

It is true that the appellant testified that he purposely shot above Barker and to the right and left of him. The jury, upon consideration of all the testimony bearing upon that point, did not accept this view of the case.

The jury were convinced from the evidence that the appellant was furiously angry, and no doubt regarded his assertion that he was only endeavoring to frighten Barker, as a mere subterfuge by which he hoped to avoid a conviction. In this there is ample proof in the record to support them.

The evidence excluded by the court, complained of in the fifth assignment, would, in the view of his counsel, have supported the appellant in this respect. It arose as follows. The appellant when testifying in his own behalf was asked by his counsel this question:

"Q. You may state what your experience has been in the use of revolvers and your ability to hit an object the size of a man?" The court sustained an objection to the question and the appellant was not allowed to answer it. The exclusion of this answer is assigned for error. It is not shown in the bill of exceptions what answer the appellant would have made to the question, which has in some cases been held necessary to obtain a ruling as to its exclusion. Railroad Co. v. Smith, 21 Wall. (U. S.) 256; Packet Co. v. Clough, 20 Wall. (U. S.) 528.

If it be conceded that he ought to have been allowed to answer the question, and that his answer would have been the most favorable possible to him, yet, as he had already testified that he did not intend or try to hit Barker, we can not think that any statement he might have made as to his expertness when coolly shooting at a mark, would have affected the

result in the slightest. Therefore the supposed error in excluding the question, is not, in our opinion, of sufficient gravity to demand a reversal. Complaint is made of the action of the court in allowing proof as to what appellant's counsel call a difficulty between the appellant and Tomlinson to go to the jury. When appellant fired the first shot, Tomlinson called to Barker to get off the car and went as quick as he could to where the appellant stood, but before he reached him the appellant had fired another shot, and fired the third just at the instant that Tomlinson did reach him, and then instantly turned his revolver upon Tomlinson and threatened his life. This was heard in the evidence as part of the *res gestae* and ought not to have been excluded.

It is urged by his counsel that all the appellant did was lawful to be done by him in defense of the property intrusted to his care and for which he was responsible. The appellant, as station agent of the railroad company, had the lawful custody of the car of lumber. He contended that Barker had no right to move the lumber except upon a delivery order from Woodley, and that Barker did not have such an order but endeavored to take the lumber by force and was a trespasser and a wrongdoer. All this may be conceded without furnishing any excuse or justification for the assault made by the appellant upon Barker. The attempt to take the lumber was a mere trespass for which the law afforded ample redress.

The appellant knew that the lumber was there to be delivered to Barker upon the payment of $73, which sum Barker offered to the appellant more than once during the quarrel that ensued between them, and while the appellant was under no legal obligation to accept the money and allow the lumber to be moved, yet it seems to us that it was mere churlishness that moved him to refuse it. He had the right to do so, however, and would have been fully justified in opposing the efforts of Barker to take the lumber by force and might lawfully have endeavored to forcibly remove him from the car. If Barker had resisted such efforts to remove him, then the appellant might have opposed force with force and if assaulted or beaten might have taken such means to defend himself as

the law extends to every one who is unlawfully assaulted.    " It has never been held " it is said in Davison v. The People, 90 Ill. 221, " that a person may kill another to prevent a mere trespass upon personal property.    The owner may, no doubt, oppose force with force to prevent his property from injury and destruction, but not to the extent of taking life, or in excess of the necessity of the case.    If he carries resistance to excess, or uses more force than is necessary, he becomes a wrongdoer."

While it may be that the appellant was right in refusing to allow the lumber to be taken without the order, and might lawfully have resisted all attempts to take it with sufficient force to make such resistance successful, yet no justification in law can be found for the assault with the revolver then made by the appellant.    We think, from the evidence, that he was actuated in making the assault on Barker more by the furious rage which possessed him than by any real desire to protect property in his charge from a trespasser.    The giving of instructions five and nine for the people, and the modifications of the tenth instruction, asked by the appellant, are the grounds of the fourth assignment of error.    Instruction five given for the people is not open to the objection urged against it.    It does not assume that the appellant shot at Barker, but states that the attempted removal of the lumber did not justify appellant in shooting at Barker with a revolver, if the evidence shows that he did shoot at him.    This is the law as we understand it.    The suggestion that the word "at" means " toward, in, or near by," and that this instruction therefore tells the jury that the appellant would not have been justified in shooting "toward or near by" Barker, even though the intent was only to frighten him from the car, is hypercritical and wholly frivolous.

The objection to instruction nine is, that it improperly defines the legal meaning of the word " malice."    Without admitting the correctness of this criticism, it is sufficient to say that malice is not an ingredient of the crime of which the jury found the appellant guilty, and therefore the instruction could have done him no harm.    The appellant asked of the

court an instruction designated in the briefs of his counsel as number ten, to the effect that if the lumber was in the lawful custody of the appellant, and was to be delivered to Barker only on an order from Woodley, and that Barker, without having such order, was attempting to forcibly remove the lumber, that the appellant had the right to use force in resisting the taking of the lumber sufficient to prevent Barker from taking it, and if appellant drew his revolver in a threatening manner and fired it for no other purpose than to frighten Barker and restrain him from removing the lumber, then they should find the appellant not guilty. The court so modified this instruction as to make it state that the force that the appellant might use to prevent the removal of the lumber could not lawfully extend to the taking of human life, and otherwise gave the instruction as asked. The modification was correct, and without it the jury might well have understood that there was no limit to the amount of force that might lawfully be used to prevent a trespass.

It is complained that the fine is excessive, and for that reason the judgment should be reversed. The statute provides in such cases for a much greater fine, and also for punishment by imprisonment in the county jail, so that in the wide range allowed, the court might be able to adjust the punishment according to the circumstances of each particular case.

The assault of which the jury found the defendant guilty, was an aggravated and unjustifiable one, and so deadly in its character as to plainly indicate that the appellant was possessed of fierce and malevolent passions to which, on that occasion, he gave full reign in reckless disregard of human life. . The punishment inflicted can not be regarded as excessive.

Finding no reversible error in the record the judgment of the Circuit Court is affirmed.

*Judgment affirmed.*