## VANDENBURGH *vs.* TRUAX.

One who does an illegal or mischievous act, which is likely to prove injurious to others, is answerable for the consequences which may directly and naturally result from his conduct, though he did not intend to do the particular injury which followed.

Therefore, where the defendant having had a quarrel with a boy in the street in a city, took up a pick-axe and followed him into the plaintiff's store, whither he fled, and in endeavoring to keep out of defendant's reach, the boy ran against and knocked out the faucet from a cask of wine, by means of which a quantity of the wine ran out and was wasted; *held* that the defendant was liable to the plaintiff for the damages.

ERROR to Schenectady C. P. Truax sued Vandenburgh before a justice; and the return states that the plaintiff declared in an action of trespass, that on the 16th or 18th of April, 1842, defendant did wilfully drive a black boy through his [plaintiff's] store, knock a cock, or faucet, from his barrel, and destroy two gallons of port wine, to his damage of $50. Plea, the general issue. The case proved was as follows : A negro boy, about sixteen or eighteen years old, was the plaintiff's ostler; the boy was seen in the street at Schenectady, near the plaintiff's store, approaching the defendant with a stone in his hand, and appearing, as the witness said, to be very angry; the defendant not appearing, to the witness, to be angry. The negro did not attempt to throw, or strike with the stone. The defendant took hold of the negro, and told him to throw the stone down; and it may be inferred from the case that he did throw it down, though the fact is not expressly stated. The boy got loose from the defendant and ran away. The defendant took up a pick-axe and followed the boy, who fled into the plaintiff's store, and the defendant pursued him there, with the pick-axe in his hand. The back door of the store was shut, so that the boy could not get out there without being overtaken ; and he ran behind the counter, as the witness believed, to save himself from being struck with the pick-axe. In fleeing behind the counter, the boy knocked out the cock, or

Vandenburgh *v.* Truax.

faucet, from a cask of wine, and about two gallons of the liquor, of the value of $4, were spilt and lost. For that injury the action was brought. The justice gave judgment for the plaintiff for four dollars damages, which was affirmed by the C. P. The defendant brings error.

*P. Potter*, for plaintiff in error. If any action will lie, it should be case, and not trespass. The injury was the *consequence* of the defendant's conduct, and not his *immediate* act. (*Leame* v. *Bray*, 3 *East*, 593; *Reynolds* v. *Clarke*, 2 *Ld. Ray.* 1399; *Percival* v. *Hickey*, 18 *John.* 257; *Guille* v. *Swan*, 19 *id.* 381.) But no action of any kind will lie against the defendant. The injury was not the joint act of the defendant and the negro. They were not acting in concert. The negro was a free agent, at liberty to go where he pleased; and it cannot be said that the defendant drove him into the plaintiff's store against the cask of wine. The case is not within *Scott* v. *Shepherd*, (2 *W. Black.* 892,) where the defendant threw a lighted squib in the market house.

*S. A. Daggett*, for the defendant in error. All persons who direct, assist, or in any way contribute to a trespass, are liable as principals, and may be sued jointly or severally. (1 *Chit. Pl.* 67; 11 *John.* 285; 9 *id.* 294; 19 *id.* 382.) The plaintiff proved the case stated in the declaration, and it is no matter whether he called the action trespass or case. (5 *Hill*, 171; *Cowen's Tr.* 166, 309.)

*By the Court*, BRONSON, Ch. J. It may be laid down as a general rule, that when one does an illegal or mischievous act, which is likely to prove injurious to others, and when he does a legal act in such a careless and improper manner that injury to third persons may probably ensue, he is answerable, in some form of action, for all the consequences which may directly and naturally result from his conduct; and in many cases he is answerable criminally as well as civilly. It is not necessary that he should intend to do the particular injury which follows; nor

indeed, any injury at all. If a man without just cause aim a blow at his enemy, which, missing him, falls upon his friend, it is a trespass upon the friend; and may be murder if a deadly weapon was used, and death ensued. Or if, in attempting to steal, or destroy the property of another, he unfortunately wound the owner, or a third person, he must answer for the consequences, although he did not intend that particular mischief. And although no mischief of any kind may be intended, yet if a man do an act which is dangerous to the persons or property of others, and which evinces a reckless disregard of consequences, he will be answerable civilly, and in many cases criminally, for the injuries which may follow: as if he dis charge a gun, or let loose a ferocious or mad animal in a mul titude of people; or throw a stone from the house top into a street where many are passing; or keep a large quantity of gunpowder near the dwelling of another. In these, and such like cases, he must answer for any injury which may result from his misconduct to the persons or property of others. And if the act was so imminently dangerous to others as to evince a depraved mind, regardless of human life, and death ensue, it will be murder. These are familiar cases, which need not be proved by referring to books.

In the case of the lighted squib which was thrown into the market house, the debate was upon the form of the remedy. The question was whether the plaintiff could maintain trespass *vi et armis*, or whether he should not have brought an action on the case. His right to recover in some form, seems not to have been disputed. (*Scott* v. *Shepherd*, 2 *W. Black.* 892; 3 *Wils.* 403, *S. C.*) In that case, the impulse was given to inanimate matter; while here, a living and rational being was moved by fear. But still, there is in some respects a striking analogy between the two cases. There the force which the defendant gave to the squib was spent when it fell upon the standing of Yates; and it was afterwards twice put in motion and in new directions, first by Willis and then by Ryall, before it struck the plaintiff and put out his eye. But as the throwing of the squib was a mischievous act, which was likely to do

harm to some one; and as the two men who gave the new impulses to the missile acted from terror and in self defence, the defendant was held answerable as a trespasser for the injury which resulted to the plaintiff. Now, here, although the negro boy may have been wrong at the first, yet when he had thrown down the stone, and was endeavoring to get away from the difficulty into which he had brought himself, the defendant was clearly wrong in following up the quarrel. When the boy ran upon the cask of wine, he was moved with terror produced by the illegal act of the defendant; he was fleeing for his life, from a man in hot pursuit, armed with a deadly weapon. The injury which the plaintiff sustained was not the necessary consequence of the wrong done by the defendant; nor was it so in the case of the lighted squib. But in both instances, the wrong was of such a nature that it might very naturally result in an injury to some third person. It is true that the boy might have gone elsewhere, instead of entering the plaintiff's store; and it is equally true that Willis and Ryall might have thrown the squib out of the market house, which was open on both sides and at one end, instead of tossing it across the market house among the people there assembled. But in the one case as well as in the other, the innocent agents were moved by fear, and had no time to reflect upon the most prudent course of conduct. It was quite natural, however, that the boy should flee to his employer for protection. And finally, the proximate cause of the injury was, in both cases, an intelligent agent.

In *Guille* v. *Swan*, (19 *John.* 381,) the immediate actors in the wrong which was done to the plaintiff, were moved by their sympathy for the defendant, who had brought himself into a perilous condition by ascending in a balloon. The balloon descended into the plaintiff's garden, which was near where it had gone up, and a crowd of people seeing the defendant hanging out of the car in great peril, rushed into the garden to relieve him; and in doing so, trod down the plaintiff's vegetables and flowers. For the wrong done by the crowd, as well as for the injury done by himself, the defendant was held answerable

as a trespasser. Although the ascent was not an illegal, it was a foolish act, and the defendant ought to have foreseen that injurious consequences might follow. The case seems not to have been put upon the ground of a concert of action between the defendant and the multitude; but on the ground that the defendant's descent, under such circumstances, would ordinarily and naturally draw a crowd of people about him, either from curiosity, or for the purpose of rescuing him from a perilous situation. It was added, however, that if the defendant had beckoned to the crowd to come to his assistance, they would all have been co-trespassers; and the situation in which the defendant had voluntarily and designedly placed himself was equivalent to a direct request to the crowd to follow him.

If the cases of the squib and the balloon have not gone beyond the limits of the law, the defendant is answerable for the injury which he has brought upon the plaintiff. And there is nearly as much reason for holding him liable for driving the boy against the wine cask, and thus destroying the plaintiff's property, as there would be if he had produced the same result by throwing the boy upon the cask, in which case his liability could not have been questioned.

It is not necessary to inquire whether the action should be trespass or case; for this declaration may as well be considered one thing as the other. It seems that the plaintiff, when before the justice, called the action trespass; but the declaration does not allege that the act was done either *vi et armis* or *contra pacem*. Courts of record might well enough have been less nice than they have been about the distinctions between trespass and case. (*Seneca Road Company* v. *Auburn and Rochester R. R. Company*, 5 *Hill*, 170.) And clearly, as the pleadings in justices' courts are construed in the most liberal manner for the advancement of justice, this may very well be regarded as an action on the case.

Judgment affirmed.