## CASTLE *v.* DURYEE.

December, 1865.

Affirming *32 Barb. 480.*

The commanding officer of a regiment may be held liable in damages for injury caused to a person in a crowd of spectators by a musket ball fired by one of the men under his command during a parade or drill, the order to fire not being required by his public duty, and he not being proved to have taken sufficient care to see that his intention that nothing but blank cartridges should be fired should be effectually complied with by every man.

*It seems,* that evidence that defendant had commanded the firing, and that one of the men had fired a gun charged with a ball, by which plaintiff was wounded, is sufficient to maintain the action, whatever precaution the defendant and his subordinates had taken to provide against the accident.

Jeremiah Castle and Mary Ann Castle, his wife, sued Abraham Duryee in the supreme court, in an action in the nature of trespass, for an assault of the plaintiff, Mary Ann Castle.

The defendant was the colonel of the Seventh Regiment, New York State Militia, and, in July, 1855, was encamped with his regiment at Kingston, Ulster county, pursuant to the orders of his superior officers. At a parade for military exercise and review, where a part of the exercise was to fire with blank cartridges, defendant, personally, gave the order to fire, and the plaintiff, Mrs. Castle, a spectator, sitting with others in front of the regimental line, and distant therefrom about three hundred and fifty feet, and outside of the line of the picket guard, was hit, and severely wounded by a ball from one of the discharged pieces.

It appeared from the evidence on the part of the plaintiff, that one company of the regiment had been just previously firing balls at a target, in a safe place in another part of the ground, and that while so doing, in some cases the guns did not go off, the caps only exploding.

When plaintiff rested, defendant asked for a nonsuit, on the ground of insufficient evidence; and that defendant, a public officer, was acting in discharge of his duty, and was not liable under the facts proved. The court refused to nonsuit the plaintiff, and defendant excepted.

Evidence was given by defendant showing that after the target practice, the men engaged in it were ordered to examine their guns, and see if they were discharged or not; they sounded with their ramrods, and those which did not sound were ordered to the rear, to be taken to the arsenal and cleaned. At the same time the captain ordered the sergeant to go around and take all the cartridges from the cartridge boxes, and afterward a second officer to go around and see that they were all out. The captain detailed a commissioned · officer to inspect the boxes again to see that these officers had done their duty; and he reported that everything was correct.

It was also shown that the defendant had issued orders before the drill, that each commandant of a company should inspect the arms of his men, to see that they were not loaded.

Defendant requested the court to charge a number of propositions, the substance of which were: that defendant was not liable for an act done in the execution of his office, &c., but if he were, personal negligence in himself must be affirmatively proved; and that if the regiment were negligent, the plaintiff was also negligent in sitting within range.

The judge instructed the jury that defendant was not liable if he had exercised the care demanded by the circumstances; he was not liable unless guilty of negligence, affirmatively shown by plaintiffs; he was not liable for the negligence of his subordinates unless he had given an improper order, or omitted some prudent precaution. Also that the use of firearms in such a case required the highest degree of care. The judge refused to charge that it was negligent in plaintiff to attend the parade.

The judge finally instructed the jury that the question submitted to them was "whether the defendant, in giving the order to fire in the manner he did, under all the attendant circumstances, was or was not guilty of negligence, or whether he omitted to give any order, or take any precaution which, under the circumstances, he should have given or taken."

Plaintiff had a verdict for one thousand five hundred dollars, and judgment was entered thereon.

*The supreme court*, at general term, on reviewing defendant's

exceptions, held them untenable and affirmed the judgment. Reported in 32 *Barb.* 480.

Defendant appealed.

*W. H. Anthon,* for defendant, appellant;—Cited Terry *v.* N. Y. Central R. R. Co., 22 *Barb.* 574; 1 *Cow. & H. Notes,* 306; Downing *v.* Rugar, 21 *Wend.* 178; Jenkins *v.* Waldron, 11 *Johns.* 114; Seaman *v.* Patten, 2 *Cai.* 312; 8 *Cow.* 178; 6 *Id.* 276; Wilson *v.* Mayor, &c., 1 *Den.* 595; Harman *v.* Brotherson, *Id.* 537; Brownell *v.* Flagler, 5 *Hill,* 282; Center *v.* Finney, 17 *Barb.* 94.

*E. Cooke,* for plaintiffs, respondents;—Cited 1 *Chitt. Pl.* 129, 130; Blinn *v.* Campbell, 14 *Johns.* 432; Percival *v.* Hickey, 18 *Id.* 257; Guille *v.* Swan, 19 *Id.* 381; Scott *v.* Sheperd, 2 *W. Blackst.* 892; Ogle *v.* Barnes, 8 *T. R.* 190; Weaver *v.* Ward, *Hob.* 134 (Bost. ed. p. 289); Taylor *v.* Rainbow, 2 *Henn. & M.* 423; Hay *v.* Cohoes Co., 2 *N. Y.* (2 *Comst.*) 159; Tremain *v.* The same, *Id.* 163; Alden *v.* N. Y. Central R. R. Co., 26 *N. Y.* 102.

DENIO, Ch. J.—No question is made but that the plaintiff was injured by the discharge of a musket, loaded with a ball cartridge, by one of the men in the ranks of the regiment; and the command to fire was given by the defendant, personally, to all the men; and the discharge was pursuant to and in obedience of that direction. These facts constitute the defendant, *prima facie,* a trespasser to the same extent as though the musket was fired by his own hand. The case does not arise out of negligence, for the injury was direct and immediate, and not consequential. On the other hand, no question can arise but that the assemblage of the men for drill and military exercise was perfectly legal; nor, but that there was an utter absence of any intent to injure the plaintiff or any other human being. The circumstance that one of the guns was loaded with a ball, was, as far as the defendant was concerned, purely accidental. In a moral point of view, and upon the amount of damages to be recovered, it was a great alleviation that the defendant had taken all the usual precautions, and all which were

deemed necessary to guard against such an accident. The fact, however, remains, that the plaintiff was shot by the discharge of a loaded gun, and that its discharge was ordered by the defendant. If it had occurred in the discharge of any public duty, which belonged to the defendant to perform, and which he had no other means of performing, the question would have arisen which the judge put to the jury, whether all the precautions had been taken which the circumstances of the case required. For instance, if the defendant and his regiment had been called upon by the civil authority to quell a riot, and an innocent person had been shot, the question would have been, whether, under all the circumstances, all the precautions to prevent injury to innocent third persons which the case admitted of, had been taken. But the defendant was not required by any public duty to cause his men to discharge their firearms at all, while people were within musket range. The manner in which he was to drill and instruct them depended essentially upon his judgment and discretion. He could have directed the firing to take place in the ravine where the target exercise occurred, or he could have stationed guards to keep off spectators at limits so remote from the parade, that no injury could possibly ensue. If he could have been sure that only blank cartridges would be used, he might safely order the firing to take place as it did. But, in my opinion, he, in directing the discharge, took upon himself, so far as a civil remedy was concerned, the responsibility of any injury which should result therefrom to any person. It is not the law, that if one, supposing a musket to be unloaded, or to be charged only with powder, snaps it at another, who is wounded, he is irresponsible in a civil action; and it is of no consequence, so far as maintaining the action is concerned, that he acted upon the most plausible, or the most reasonable grounds, and fully believed that the gun was not charged with anything which could injure another.

In Underwood v. Hewson, 1 *Strange*, 596, the defendant was uncocking a gun, and the plaintiff standing by to see it, it went off and wounded him, and it was held that the plaintiff might maintain trespass. In an earlier case, reported in *Hobart*, the defendant, in trespass for an assault and battery, pleaded that

he was, amongst others, by the commandment of the lords of the council, a trained soldier in London, of the band of one Andrews, captain; and so was the plaintiff; and that they were skirmishing with their muskets charged with powder for their exercise in *re militaire*, against another captain and his band, and as they were so skirmishing, the defendant, *casualiter et per infortunium et contra voluntatem suam*, in discharging his piece, did hurt and wound the plaintiff; *absque hoc* that he was guilty, *aliter sive alio modo;* and upon demurrer by the plaintiff, judgment was given for him. The report proceeds: "for, though it were agreed that if men in tilt or tourney in the presence of the king or of two masters of defense, playing their prizes, kill one another, that this shall not be felony, . . . yet, in trespass, which tends only to give damages according to hurt or loss, it is not so; . . . . and, therefore, no man shall be excused of a trespass, . . . . . except it may be judged utterly without his fault; as if a man by force, take my hand and strike you, or, if here the defendant had said that the plaintiff ran cross his piece when it was discharging, or had set forth the case with the circumstances, so as it had appeared to the court that it had been inevitable, and that the defendant had committed no negligence to give occasion to the hurt." Weaver *v.* Ward, *Hob.* 134. These cases have been uniformly approved of in the English courts. They, with many others, are referred to in Leame *v.* Bray, 3 *East,* 593, which was trespass for accidentally driving a carriage against another, in a dark night. The defendant was held liable. All the judges expressed opinions. I quote that of GROSS, J., which contains the substance of all that was said: " Looking at all the cases from the Year Book, in 21 Henry VII., down to the latest decisions on the subject, I find the principle to be, that if the injury be done by the act of the party himself at the time, or, he be the immediate cause of it, though it happened accidentally or by misfortune, yet he is answerable in trespass. The case mentioned from *Strange,* that in *Hobart,* and those in the *Term Reports,* all agree in the principle."

I am of opinion, therefore, that the judge might properly have instructed the jury, that the evidence that the defendant had commanded the firing, and that one of the men fired a gun

charged with a ball, by the discharge of which the plaintiff was wounded, was sufficient to sustain the action, whatever precautions the defendant and his subordinate officers had taken to provide against such an accident.

I am, moreover, of opinion that the judgment can be sustained upon the theory adopted by the judge. He put the case on the ground of want of due care and proper precaution; and charged, in effect, that there could be no recovery unless the defendant had been guilty of negligence.

The defendant's exception to this instruction is based upon the assumption that the facts, which were clearly proved and were not contradicted, conclusively rebutted the imputation of negligence. These facts were certainly very strong. The defendant, in the nature of the case, was obliged to act by the agency of his subordinates. The measures taken by his direction appear to have been very judicious and well calculated to secure what was aimed at, namely, that none of the muskets should be charged with ball. But they failed, as all such precautions will sometimes do. Some officer or man neglected his duty, or some ear failed in catching the true sound of the rammer, and a lamentable accident was the result. The negligence, in my opinion, consisted in firing at all into a crowd of people without positive knowledge that no one musket in the whole regiment contained anything more than a blank cartridge. Let us see what chances there were for mistake. Ball cartridges had, that day, certainly been in the hands of a part of the men, and in their boxes. It was designed that they should all be taken out; but the duty of doing it had to be intrusted to a number of men of an average, or perhaps more than an average, grade of intelligence and prudence. General evidence was given that all the officers and men were sober; but there may have been an absent-minded man, or an excitable or an excited man, or one whose sense of hearing was not ordinarily acute among them. The occasion was of the nature of a holiday, and some of the men had been engaged in rivalry as to their skill in firing. Under such circumstances, it was easy to make a slip in that thorough and perfect examination which was necessary to secure absolute safety. We know that such a slip was made by somebody, and we can see that it was not very remarkable that

it should have been made. When the question was as to the prudence of firing point blank at a crowd of people, I think the defendant was deficient in the care required by the circumstances, in ordering it to be done. But, if some minds should differ as to this, the judge, I think, was right in submitting the question to the jury. If the defendant had been bound by any law, or by public duty, to or order that discharge of musketry, probably what was done by way of precaution would have been all that military usage required; but there was no such law, and he was under no such duty.

I do not think any fault is justly imputable to the plaintiff in being where she was. There was no evidence that she knew that musket balls had been in the possession of any of the men, or even that they intended to fire at all. She was impliedly permitted by the defendant to be at the place where she was, and she was not bound to suspect that any thing would be done to endanger her life or limbs.

We have nothing to do with the amount of the verdict; but I cannot refrain from expressing my approval of its moderation. A very large amount was claimed in the complaint, which may well have justified the defendant in contesting, and we doubt not but that the appeal was brought with a view of having an interesting point of law settled by the court of final appeal. The judgment must be affirmed.

A majority of the judges concurred.

Judgment affirmed.