James Spelina, Jr., Appellee, v. Ernest Sporry and
E. J. Albrecht Company, Appellants.

Gen. No. 37,630.

378

Opinion filed March 29, 1935.

IGOE & FLAHERTY and CASSELS, POTTER & BENTLEY, all of Chicago, for appellants; MICHAEL L. IGOE, BARRY GILBERT, GEORGE H. MASON, LESLIE H. VOGEL and E. DOUGLAS SCHWANTES, all of Chicago, of counsel.

JOSEPH LUSTFIELD and WILLIAM C. GREATMAN, both of Chicago, for appellee; ABRAHAM W. BRUSSELL, of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Plaintiff brought an action of assault and battery in the circuit court to recover damages for injuries received as a result of an alleged wilful assault by defendant Ernest Sporry, superintendent of E. J. Albrecht Co. (hereinafter referred to as the corporation), his employer, by means of a deadly weapon. The jury awarded plaintiff $12,000, presumably including punitive damages, upon which judgment was duly entered. The joint appeal by defendants followed.

The declaration charged that the corporation, engaged in constructing a bridge in the Forest Preserve District in Cook county, Illinois, employed Ernest Sporry as its superintendent, and invested him with a shotgun for purposes unknown to plaintiff; that Sporry, while acting within the scope of his employment, with force and arms assaulted and shot plaintiff with said gun and so wounded and injured him that he was rendered incapable of attending to his business affairs, necessitating the expenditure by him of $500 in endeavoring to be cured of his wounds, and that said wrongs were done by Sporry to plaintiff against the peace of the People of Illinois, to the damage of plaintiff in the sum of $50,000.

Defendants, having first filed a plea of the general issue, obtained leave of court to file a special plea on the date of the trial, wherein they allege in substance that in the construction of said bridge the corporation purchased and owned certain lumber used for erecting scaffolds along said bridge; that plaintiff, with others, unlawfully came upon the bridge and scaffolding, destroyed the same, and was attempting to steal certain parts of the lumber; that when defendants requested plaintiff to desist he refused to do so, and thereupon Sporry, in defense of said property and to prevent the demolition of the scaffolding and the stealing and carrying away of said lumber, shot plaintiff as alleged in the declaration, "but in doing so used no more force than was reasonably necessary."

To support the foregoing plea of justification, Sporry testified that during the summer of 1934 he was superintending the building of a concrete bridge over the Des Plaines River in Lyons, Illinois, for defendant corporation; that on the afternoon of August 19, as he was about to leave for home he observed plaintiff and two other men wrecking a scaf-

fold which the corporation had constructed along the bridge; that he went to the tool wagon, took a shotgun, walked along the curb to the east end of the bridge, leaned over the rail and fired a shot into the ground alongside plaintiff, who, with his companions, was pulling a plank from the scaffold. The men kept on working, and according to Sporry he then shouted "Get the hell out of there." They looked up and plaintiff thereupon "grabbed a 3 x 6—twenty feet long laying on the ground, and put it on his shoulder and walked in a south direction for the woods. The edge of the broken woods is 150 to 200 feet away from the bridge, clear of the bridge site. I shouted at him, 'Drop it or I will let you have it.' He was close to the woods and it looked to me that he would disappear with the lumber, and I shot. I leveled the gun in his direction without aiming and I shot. He dropped the piece and disappeared. I turned back to the tool wagon, put the gun away, stepped into my car and went home. I didn't know Spelina before that time. I didn't have any ill will or any ill feeling toward him. My purpose in firing the shot was to prevent him from taking the piece of plank away."

Taking Sporry's testimony as true, it may be conceded that plaintiff was a trespasser and a wrongdoer (although plaintiff and his witnesses deny wrecking the scaffold and taking any lumber, and the jury may have believed his testimony) without furnishing any excuse or justification for the assault made upon him by Sporry. If plaintiff was in fact taking away one of the defendants' planks, Sporry "might lawfully have resisted all attempts to take it with sufficient force to make such resistance successful, yet no justification in law can be found for the assault" with a deadly weapon then made on plaintiff. (*Powers v. People,* 42 Ill. App. 427, 432.) As much as the law respects the property rights of an individual, it will

not permit him to take life or employ such dangerous measures as will endanger life merely to protect his personal property rights. This rule is well settled by authority and invariably followed. (*Mills v. Wooters,* 59 Ill. 234, 235; *Davison v. People,* 90 Ill. 221, 229; *Commonwealth v. Donahue,* 148 Mass. 529, 531, citing numerous cases to the same effect in various jurisdictions.)

Notwithstanding their plea of justification, defendants on oral argument conceded the foregoing principle of law to be entirely sound, but asserted that Sporry had no intent to hit or seriously injure plaintiff, and fired only to scare him away and cause him to drop the lumber. Sporry's intent, so far as it may be important, is best evidenced by what he said and did. According to his own admission, he shouted, ''Drop it or I will let you have it,'' and then leveled the shotgun in plaintiff's direction, and fired. The shooting was a deliberate act constituting an assault, and Sporry certainly must have apprehended that some of the shots fired in the general direction of plaintiff would take effect.

Defendants are chiefly aggrieved by the size of the verdict and insist it was produced by the court's ruling on evidence and in erroneously instructing the jury. Defendants offered to prove "that on several occasions prior to the 19th of August, 1932, this witness (Charles Moderi), as an employee of E. J. Albrecht Company, had seen plaintiff in this case (James Spelina, Jr.) taking lumber away from the construction work on the bridge, and had on such occasions chased plaintiff away from the work." The court excluded the proffered evidence. Defendants contend that this proof was admissible, both in support of their plea of justification and in mitigation of exemplary damages. It is argued that the jury were required to decide whether or not defendants used rea-

sonable force in the protection of property which plaintiff was engaged in despoiling and stealing; that as the case was given to the jury, this was considered plaintiff's first offense and they may have thought that under the circumstances, shooting toward plaintiff constituted a use of excessive force, a view that might have been altered in the light of the offered evidence; that the tendered proof was also admissible in mitigation of noncompensatory damages, and to show Sporry's *animus* toward plaintiff, who they say had committed a series of depredations on property which Sporry, as superintendent of construction, was in duty bound to protect. We think the exclusion of the offered evidence may be justified on various grounds. (1) For the reasons hereinbefore stated it was clearly inadmissible to show justification for the shooting with a deadly weapon. Even in the light of prior depredations, Sporry would not have been justified in resorting to such dangerous measures for the mere protection of defendants' personal property rights. (2) While evidence of prior depredations is admissible on the issue of mitigation of damages, it must be limited to that particular issue. Counsel say that the evidence should have been received and subsequently limited by the instructions of the court to the specific issue for which it was competent, namely, in mitigation of damages. With this we cannot agree. The rule is well settled that if evidence is admissible on one particular theory, and an offer is made without limiting it to such issue, the trial court will be justified in rejecting the offer to prove matters generally. It was so held in *Byler v. Asher,* 47 Ill. 101, 103, where defendant offered certain evidence as a defense. The trial court rejected the offer. The evidence was admissible in mitigation of damages. The reviewing court approved the ruling, and said (p. 103):

"It is urged, that while this evidence does not constitute a defense, still it was proper to show the *animus* of appellants in refusing to receive the vote. It is an answer to this position, that it does not appear to have been offered for such a purpose, and even if it were proper, to mitigate damages, it should have been offered for that purpose, and not as a defense." To the same effect are *Village of Jefferson v. Chapman*, 27 Ill. App. 43, 52; *Sanitary District v. McMahon & Montgomery Co.*, 110 Ill. App. 510, 526; *Sinopoli v. Chicago Rys. Co.*, 316 Ill. 609, 612. (3) The offer of proof was not competent because the facts therein stated were not logically relevant to the issue of mitigation of damages in so far as Sporry's shooting was concerned. The offer does not state whether Sporry had knowledge of plaintiff's prior depredations; it merely refers to the observation of Moderi, an employee of the corporation, and his conduct in chasing plaintiff away from the premises. It does not appear from the offer that Sporry had ever observed plaintiff taking lumber or that he had chased him away.

No evidence was offered by plaintiff on his case in chief as to the pecuniary circumstances of either defendant, but, on cross-examination Sporry testified, over the objection of defendants, that he was earning $36 a week and he was also permitted to state that the Albrecht Company, his employer and codefendant, was capitalized for $100,000, to which no objection was made. It is earnestly argued that this evidence was prejudicial to defendants on the question of damages. Obviously, the showing that Sporry earned $36 a week could not have produced the large verdict complained of, nor could such showing have been prejudicial either to Sporry or to the corporation. The evidence relating to the capitalization of the corporation was not

objected to, nor was any motion made to strike the testimony, and therefore counsel cannot claim prejudicial error on that ground. The rule that a party cannot urge, as error, the admission of evidence to which no objection is interposed is so well settled as to require no citation of authority.

Defendants criticize that portion of the court's charge to the jury which relates to punitive damages, as follows:

"The Court instructs the Jury that if you believe from the evidence that the assault was wanton, reckless or vicious and uncalled for in character, then the Jury may add to such actual damages, if any such you find, such a sum as you may believe from the evidence would be reasonable and just as punishment.

"The Court instructs the Jury that in actions for trespass for assault and battery such as is the case at bar, the condition in life and circumstances of the parties are proper subjects for the consideration of the Jury in estimating the damages. In such actions the Jury may allow damages not only to compensate the plaintiff, but also to punish the defendant or defendants, according to the circumstances of the case."

Several pages of defendants' brief are devoted to citations presuming to hold that it is error, as counsel say, to allow the jury to consider "evidence as to the pecuniary circumstances of the defendants or any of them." We have carefully examined these and other authorities, and find that Illinois courts have been extremely reluctant to allow judgments to stand which apparently included a large measure of punitive damages where evidence of the pecuniary circumstances of one defendant probably induced a large verdict against other defendants in moderate or humble circumstances, or where the instructions were so phrased as to emphasize the pecuniary ability of one defendant to pay punitive damages. In actions of tort where punishment is introduced as an element of damages,

the only reason ever assigned for making inquiry into the condition and pecuniary circumstances of the defendant is that what would be a severe punishment for a poor man by way of fine or exemplary damages, might not be felt by one in better circumstances. Upon this principle alone has evidence of the inquiry into the pecuniary circumstances of a defendant been held competent and proper. (*Smith v. Wunderlich,* 70 Ill. 426.) The authorities are generally to the effect that it is proper for the jury to consider a single defendant's wealth and pecuniary ability under proper instructions, where there are no codefendants. The difficulty, of course, arises where there are two or more joint tort-feasors, for if found guilty the same amount of damages must be assessed against all. While it appears that the evidence relating to the corporation's capitalization in the case at bar was admitted without objection, nevertheless we are convinced that this evidence, together with the charge given to the jury, undoubtedly produced a verdict which, as defendants insist, was largely punitive. The charge to the jury in the case at bar is free from any of the criticisms leveled at instructions given in the cases cited, but that portion of the charge which tells the jury that they may consider ''the condition in life and circumstances of the parties,'' in estimating the damages, in the light of the evidence before the jury, could have reference to nothing else than the pecuniary circumstances of the parties, and was undoubtedly prejudicial to the defendant Sporry.

It is also urged that the court erred in refusing to charge the jury that if they should find the shooting was not wanton and malicious, that they might assess only actual damages suffered by plaintiff. This element is included in the charge hereinbefore set forth, and it was not error to refuse the instruction offered in another form.

Both defendants are represented by the same counsel, and they have insisted all through their briefs and on oral argument that the evidence and instruction produced a verdict which is not only excessive as to both defendants, but especially prejudicial to Sporry. Prior to the enactment of the Civil Practice Act, it would have been incumbent upon the court of review, in view of our conclusion in this regard, to have reversed and remanded the cause for a new trial as to both defendants. Under the new act as we read it, however, it is possible for the reviewing court to give any judgment or make any order which ought to have been given or made, and grant such relief, including a partial reversal, as the case may require. (Cahill's 1933 Revised Statutes, ch. 110, ¶ 220; *Fogel v. 1324 N. Clark St. Bldg. Corp.*, 278 Ill. App. 286.) Therefore, much as we regret so doing, and especially in view of the fact that defendant Sporry committed the assault, we feel constrained to reverse the judgment and remand the cause for retrial as to Sporry, but not as to the corporation defendant.

Defendants insist that the verdict was grossly excessive and we are inclined to hold with them in that contention. While it is true that the assault was wanton, the monetary loss suffered by plaintiff was nominal. He undoubtedly suffered considerable pain, and was confined to the hospital and his home for several weeks, and his injuries necessitated treatment and attendance by a physician. Examination of the medical evidence, however, justifies the conclusion that his injuries are in no way permanent. He was unemployed at the time of the assault, and suffered no loss of earnings. Upon a careful consideration of all the circumstances in the case, we believe that a judgment of $3,000 would have amply compensated him for his pecuniary loss, suffering and for the element of punishment which may be included in this form of action.

Therefore, if plaintiff will file a remittitur of $9,000 within 30 days the judgment in his favor will be affirmed as against the corporation, E. J. Albrecht Company, for $3,000; otherwise it will also be reversed and the cause remanded for a new trial.

*Judgment reversed and remanded as to defendant Sporry; and affirmed for $3,000 as to defendant corporation, E. J. Albrecht Company, on remittitur of $9,000 to be filed within 30 days by plaintiff; otherwise judgment to be reversed and the cause remanded.*

SCANLAN and SULLIVAN, JJ., concur.