ABRAHAM GROSS, Plaintiff, *v.* MORRIS GOODMAN and HYMAN GOODMAN, Defendants.

Supreme Court, Trial Term, New York County, May 7, 1940.

*Savin, Reich & Zinn,* for the plaintiff.

*Brodsky & Stone,* for the defendants.

EDER, J. The defendant Hyman Goodman, a driver employed to make deliveries, discovered that several tubs of butter were missing from his truck. Some time thereafter he was notified by a patrolman to be on guard as he suspected that there were truck thieves in the neighborhood. A short time later the defendant recognized some suspected thieves and gave chase and fired a loaded pistol, for which he had a permit, intending to frighten them and to get them to stop. The shooting took place on Greenwich street, a public thoroughfare in the city of New York. The bullet, however, struck the plaintiff, a pedestrian, lawfully on the street, seriously injuring him. The plaintiff brought this action against the defendant and also against his brother, who employed him, to recover damages, alleging that he carried the pistol at the direction of his brother and that in firing the shot he did so while acting for him in the course of his employment. The action was discontinued as to the latter. The defendant Hyman Goodman contends that there is no liability on his part, under the circumstances, it being undisputed that he did not fire at the plaintiff and had no intention of injuring him; that as said defendant was engaged in a lawful act in seeking to recover the stolen property

and to apprehend the culprits the accidental and unintentional wounding of the plaintiff does not give rise to any cause of action against him — *damnum absque injuria.*

I am of opinion that in the situation here present, viewed from any angle, the defendant is clearly liable and must respond in damages.

The mere license to carry a revolver did not carry with it any grant or right to use it indiscriminately or at will for any and every purpose. The act of said defendant in discharging it was unlawful in the first instance as well as *contra pacem.* It is a penal offense for a person, otherwise than in self-defense or in the discharge of official duty, to willfully discharge any species of firearm in a public place or in any place where there is any person to be endangered thereby, although no injury to any person ensues. (Penal Law, § 1906.) Death resulting from an act of culpable negligence may constitute manslaughter. (Penal Law, § 1052; *People* v. *Heineman,* 211 N. Y. 475, 480; *People* v. *McCarthy,* 110 id. 309.) The defendant was not acting in self-defense or in the discharge of official duty and hence had no lawful right to discharge his pistol, which was a willful and intentional act. And it is of no consequence, as far as this action is concerned, that he acted upon the most plausible motives or the most reasonable grounds. His act in firing the revolver was still unlawful.

" As much as the law respects the property rights of an individual, it will not permit him to take life or employ such dangerous measures as will endanger life merely to protect his personal property rights. This rule is well settled by authority and invariably followed." (*Spelina* v. *Sporry,* 279 Ill. App. 376, 380.) Even in the knowledge and light of prior depredations (see *People* v. *McCarthy, supra,* p. 314) the defendant would not have been justified in resorting to such dangerous measures for the mere protection of personal property rights. (*Spelina* v. *Sporry, supra,* p. 382.)

The fact that the defendant was actuated by motives of fealty to his employer or other laudable intentions does not absolve him from liability. And even in a case where a person is engaged in doing a lawful act he is answerable for damages which result from his negligence or want of due care and caution on his part. (*Vandenburgh* v. *Truax,* 4 Den. 464, 465.) And this is particularly true where dangerous instrumentalities are employed. " A very high degree of care is required from all persons using firearms in the immediate vicinity of other people, no matter how lawful, or even necessary such use may be." (*Hankins* v. *Watkins,* 77 Hun, 360; *Castle* v. *Duryee,* 1 Abb. Ct. App. Dec. 327; *Morris* v. *Platt,* 32 Conn. 75, 87.)

Here the defendant was wholly insensible to the fact that the danger of accidental injury to third persons from the use of his firearm, even for a lawful purpose, was very great, and particularly its use in a populous place like a city street, and that injury to the public from its use was very likely. Nor does the fact that the defendant's wounding of plaintiff was accidental and unintentional excuse him. Where one does an act in such a careless and improper manner that injury to third persons may probably ensue, he is answerable, in some form of action, for all the consequences· which may directly and naturally result from his conduct. This is so whether the action be trespass *vi et armis* or the suppletory personal action on the case. (*Morris* v. *Platt, supra; Cole* v. *Fisher*, 11 Mass. 137; *Vandenburgh* v. *Truax, supra.*) " It is not necessary that he should intend to do the particular injury which follows \* \* \*. And although no mischief of any kind may be intended, yet if a man do an act which is dangerous to the persons or property of others, and which evinces a reckless disregard of consequences, he will be answerable civilly, and in many cases criminally, for the injuries which may follow." (*Vandenburgh* v. *Truax, supra*, p. 465. See, also, *Bullock* v. *Babcock*, 3 Wend. 391.) As was said in *Magar* v. *Hammond* (183 N. Y. 387, 390), " if without intending to hit the plaintiff or any human being, he recklessly or wantonly shot where he had good reason to believe there were human beings, then he is liable for the injury caused to the plaintiff."

However the conduct of the defendant is regarded, he ought to have foreseen the probability of injury — that injurious consequences might follow from his act in firing heedlessly. The plaintiff had a perfect legal right to be upon the public street and was not bound to anticipate or suspect that anything would be done to endanger his life or limbs. The plaintiff's injury was a serious one, the bullet penetrating his left leg. He was confined to a hospital for almost two weeks and incapacitated for a period of about six months. His earnings averaged about twenty-five dollars per week. He is entitled to a fair measure of recompense. Damage in the sum of $2,500 is awarded to plaintiff. Judgment accordingly. Thirty days' stay. Sixty days to make a case.