Dorothea E. Donaldson, J.
These claims, properly filed and not submitted to any other tribunal for determination, arise from an instance allegedly occurring on July 15, 1962 which resulted from the negligence of the defendant, the State of New York, in the hiring of personnel and in the improper supervision, confinement, care and custody of a patient at the Buffalo State Hospital.
Claimant, Robert Higgins, Jr., an infant, brings suit through his guardian ad litem, Robert Higgins, Sr., for personal injury, and claimant, Robert Higgins, Sr., father of the infant, sues for medical expenses, hospital and nursing care.
The record shows and the parties agree that one of the participants in the alleged incident of July 15, 1962 was a patient, legally declared incompetent, confined to the Buffalo State Hospital at Forest and Elmwood Avenues in the City of Buffalo, known as John Myzdian. Claimants contend that they received damage as the result of an assault. The defendant, the State of New York, rebuts the contention on the grounds that if there was an assault, negligence on its part has not been proven because (1) proof of same has not been shown, and (2) there was a lack of foreseeability of a dangerous tendency in the legally declared incompetent.
On Sunday, July 15, 1962, at about 1:00 p.m., in the afternoon, Robert Higgins, Jr., an infant then 11 years of age, in company with his younger brother Joseph, then age 7, rode to Delaware Park in the City of Buffalo on a bicycle. First, the boys visited the Historical Building in the park for about 45 minutes. Then, since it was a sunny day, they walked in the direction of the art gallery in Delaware Park, but were refused admission because they were not accompanied by a parent. They then went to Delaware Park Lake behind the statue of David where they amused themselves by throwing stones into the lake. While so doing, Joseph noticed a man running towards them, and called a warning to claimant, Higgins, Jr. As Higgins, Jr., ran, he was caught by this man and, as he claims, hit with a rock in the shoulder and the head. Higgins, Jr., after the attack and oh the ground, saw this man walk toward the old footbridge at *795 Elmwood Avenue and noticed that he was grabbed by two men. The man was John Myzdian.
While Higgins, Jr., was lying on the ground, bystanders and police came to him and later took him to the casino across the lake. From there he was taken to Sisters Hospital to the emergency room where he received emergency medical treatment. He remained in the hospital four days and received treatment from a doctor for laceration of the scalp, mild concussion and soft tissue injury of the right shoulder. Both concussion with headaches, and shoulder injury disappeared after the expiration of four weeks. The scalp laceration above the left ear resulted in two small circular scars which are visible in a close-cropped haircut.
J ohn Myzdian had been legally committed to the Buffalo State Hospital on October 11,1950 and was, on July 15,1962 and since that date, a patient in that hospital. During the course of his confinement, there were only four or five occasions on which he showed any assaultive or attack characteristics. He was classified as an “ open ward ” patient and would have been released on. convalescent care if he had any relatives, family or friends with whom he could reside. John Myzdian was born July 15, 1893, and was a widower whose wife and child died in childbirth.
In accordance with the policy of the Department of Mental Hygiene, Buffalo State Hospital followed an approved psychiatric program with “ closed wards ”, “ open wards ” and convalescent care. “ Open ward ” patients were usually given the freedom of the buildings in the institution as well as the grounds thereon and permitted to pass through the open gates in order to walk on the sidewalks in the immediate vicinity of the institution. The grounds of the hospital were usually patrolled by employees of the institution in order to observe the attitudes and actions of the patients. For 1 ‘ open ward ’ ’ patients to leave the hospital grounds or the sidewalk in the immediate vicinity thereof, it was required that they obtain permission from some employee of the institution. Convalescent patients, on the other hand, were usually released entirely from confinement in the hospital in the care and custody of relatives or friends and required only occasional visits to the hospital clinic for observation and control.
July 15,1962 was a Sunday. On this day no employees of the Buffalo State Hospital patrolled the building grounds since this was visitor’s day. John Myzdian, on this day, telling only the watchman and receiving no permission from any employee or doctor with the hospital, went outside the grounds of the institution, left the sidewalk in the immediate vicinity of the hospital, *796 crossed the roadway and entered the grounds of Delaware Park. Apparently it had been his custom on Sundays to visit the grounds of the park in order to watch baseball games being played in an area of the park distant from the hospital. While this practice of John Myzdian was known to employees of the hospital, he was never given specific permission to attend the ball games, was never provided with an escort for such purpose and was never forbidden to watch the games.
Delaware Park is a large tract of land lying within the city limits of the City of Buffalo, open to the public, containing therein an historical museum, an art gallery, a lake, footpaths and playing areas. This park enjoys numerous visitors during the Summer months and conducts many programs for school children during their Summer vacation. It was not, therefore, unusual for children of all ages to amuse themselves at play in various portions of the park on any day of the week.
On July 15,1962 in the early afternoon, John Myzdian entered Delaware Park. He did not go to the ball field but sat down under a tree and read a newspaper. At about the same time claimant, Robert Higgins, Jr., and his younger brother Joseph, were, as young boys are apt to do, amusing themselves throwing stones into Delaware Park lake. It is not clear whether they were in the immediate vicinity of John Myzdian but it is definite that they were within sight of this man. Both boys insist that all of the stones they threw were directed toward the lake. John Myzdian seemed to indicate that the boys were throwing stones at him. Considering the age of -the younger boy Joseph, then age seven, it is quite probable that his ability to throw stones was not as accurate or as strong as that of his older brother, claimant Robert Higgins, Jr. Perhaps a stone did fall in the direction of the older man.
However, claimant Robert Higgins, Jr., was caught by John Myzdian, who not only ran for the boys and collared one of them, but repeatedly struck the boy with a stone inflicting scalp and shoulder injuries. Even if the acts of the children provoked the older man, such acts of provocation do not permit a strange adult to inflict injury on a young boy.
The Buffalo State Hospital and its employees have a responsibility to patients committed to their care. As long as a patient has not been released on convalescent care he is entitled to and required to have protective measures enforced to keep himself free from harm and to prevent the patient from doing harm to himself or others. The failure to enforce such protective measures is neglect. An unknown, undirected and uncontrolled freedom of movement permitted to John Myzdian on Sunday after *797 noon, and in particular Sunday afternoon, July 15, 1962, is another indication of defendant’s neglect of duty. Liability follows when an injury is the natural and proximate consequence of neglect of duty (Croniser v. State of New York, 195 Misc. 576). Where one does an act in such a careless and improper manner that injury to third persons may probably ensue, he is answerable in some form of action for all the consequences which may directly and naturally result from his conduct (Gross v. Goodman, 173 Misc. 1063).
This neglect of duty was the proximate cause of the resultant injury. Such neglect constitutes actionable negligence.
The contention of defendant, the State of New York, that there was a lack of foreseeability of a dangerous tendency in the legally declared incompetent is not relevant.
The claimants’ motion, upon which decision was reserved with respect to the testimony given at trial by Dr. Henry H. Haines, the Acting Director of the Buffalo State Hospital, with respect to that portion of the testimony based upon privileged communication between physician and patient is sustained and that portion of the testimony is stricken from the record.
Accordingly, the claimants, being free from contributory negligence, are entitled to recovery.
Therefore, an award is made to claimant Robert Higgins, Sr., in the amount of $114.75 for medical and hospital expenses and to claimant Robert Higgins, Jr., an infant by his guardian ad litem, Robert Higgins, Sr., in the sum of $600 for temporary disability and for permanent head disfigurement.