LYNDA JONES, Individually and as Administratrix of the Estate of HERBERT W. JONES, JR., Deceased, Respondent, v STATE OF NEW YORK, Appellant.

Fourth Department, November 4, 1983

**APPEARANCES OF COUNSEL**

*Robert Abrams, Attorney-General (Peter Dooley* of counsel), for appellant.

*Cunningham, Pares & Renda (William Cunningham* of counsel), for respondent.

**OPINION OF THE COURT**

HANCOCK, JR., J. P.

Herbert W. Jones, Jr., an account clerk employed by the State at Attica Correctional Facility, was taken hostage on September 9, 1971 during the Attica uprising. He died instantly on September 13, 1971 from a gunshot wound to the head caused by a .270 caliber bullet discharged by one of the State troopers during the rescue and retaking operation. In her claim against the State for Jones' wrongful death, claimant, his widow and administratrix, asserted two causes of action, the first for negligence and the second for intentional tort. In an earlier appeal to this court (*Jones v State of New York*, 40 AD2d 227) we reversed the Court of Claims and dismissed the claim in its entirety. Because workers' compensation is the exclusive remedy for the claims based on negligence, the Court of Appeals affirmed

our dismissal of the first cause of action (*Jones v State of New York,* 33 NY2d 275, 279). As to the second cause of action based on intentional tort,[1] however, it reversed and reinstated the claim stating: "Should the Judge in the Court of Claims find that the force used against the decedent was more than necessary under all the circumstances, then plaintiff is entitled to recover (*Hinton* v. *City of New York,* 13 A D 2d 475, *supra;* see, also, 3 N.Y. Juris., Assault and Battery, §§ 8, 11, at pp. 235, 238; 40 N.Y. Juris., Municipal Corporations, §§ 1003, 1009, p. 262)" (*Jones v State of New York,* 33 NY2d, at p 280). The case now comes before us on the State's appeal from a judgment after trial awarding damages.

The general rule is, of course, that an employee injured in the course of employment is relegated to workers' compensation as his exclusive remedy (Workers' Compensation Law, §§ 11, 29, subd 6). Where, however, injury results from "an intentional tort perpetrated by the employer or at the employer's direction, the [Workers'] Compensation Law is not a bar to a common-law action for damages (*Lavin* v. *Goldberg Bldg. Material Corp.,* 274 App Div 690; *De Coigne* v. *Ludlum Steel Co.,* 251 App. Div. 662)" (*Finch v Swingly,* 42 AD2d 1035; see *Estupinan v Cleanerama Drive-In Cleaners,* 38 AD2d 353, 354, 355). To recover for his injuries under the intentional tort exception, the employee must establish that the employer used excessive force and that the acts of the employer constituting such excessive force were deliberate and not merely reckless (see *Werner v State of New York,* 53 NY2d 346, 352; *Finch v Swingly, supra;* 2A Larson, Law of Workmen's Compensation, §§ 68.00, 68.13); and the employee's burden of proof on these issues has been characterized as "heavy" (see *Werner v State of New York, supra,* p 352).

Whether the injury is inflicted by the employer himself or by a coemployee, the basic rule is the same. Thus, where

---

1. The basis for the intentional tort cause of action appears in the following paragraph of the claim: "SEVENTEEN: That upon information and belief, and on or about the 13th day of September, 1971 in the forenoon of that day, a State Police officer under the command of defendant, Henry F. Williams, while acting in the course of his employment by the State and for the purpose of forwarding the State's interests, without just cause or provocation and with great force and violence, wilfully and intentionally assaulted and battered the Claimant's decedent by firing several shots of a gun at Claimant's decedent, one or more of which shot and struck him in the head, chest and back, thereby causing his death."

one employee assaults another and the act was neither instigated nor authorized by the employer, the employer will not be found liable in an action for damages under *respondeat superior* (see *Thompson v Maimonides Med. Center,* 86 AD2d 867, 868; *O'Connor v Midiria,* 85 AD2d 896, 897), for the offending employee's conduct, although intended by him, may be found accidental as to the employer and therefore compensable under workers' compensation with the result that the injured employee's common-law action is barred by the exclusivity provision (Workers' Compensation Law, §§ 11, 29, subd 6) (see *Werner v State of New York, supra,* p 353; *Estupinan v Cleanerama Drive-In Cleaners, supra,* p 355; *Mazarredo v Levine,* 274 App Div 122). Where, however, the assault by the coemployee was directed by the employer or committed at the employer's instigation, common-law liability may result (*Lavin v Goldberg Bldg. Material Corp., supra*).

The question is whether, applying the above rules, the evidence adduced on the trial is sufficient to support liability under the intentional tort exception. We find that it is and that the judgment should be affirmed.

The Court of Appeals has not, in either *Werner v State of New York* (*supra*) or *Jones v State of New York* (*supra*), specified what degree of force will be viewed as sufficiently excessive to impose liability on the State for an intentional assault. By any definition of "excessive force", however, we agree with the Court of Claims that the force employed here "in retaking the facility" was "indeed excessive". A full-scale armed assault was planned and carried out for the purpose of retaking control of the prison from the inmates and freeing the hostages. Almost 700 men, including 262 State troopers and 423 correction officers from both Attica and Auburn Correctional Facilities plus some park policemen from Letchworth State Park, participated. They were armed with a wide variety of weapons including .270 caliber rifles suitable for big game hunting and other high-powered rifles of various calibers, .38 and .357 caliber pistols, 12 gauge shotguns loaded with "00" buckshot, a .44 Magnum Ruger carbine and .45 caliber Thompson machine guns. Their orders were to fire when in their judgment an "overt act" was in progress which threatened the life of one

of the hostages, each of whom was being physically held by an inmate. After an immobilizing type of tear gas was dropped for the purpose of putting the inmates "on the ground", the assault team fired hundreds of rounds of ammunition of various descriptions in the direction of the prisoners and hostages, most of whom were grouped in D yard — including 261 rounds of 12 gauge shells, each containing 9-12 pellets of buckshot which would spread into a 24-inch wide pattern at 150 feet. It was a cloudy day and visibility was obscured by the tear gas and the smoke from smoldering fires in the prison. The gas masks that members of the assault group were wearing made it difficult and in some cases impossible to aim through the rifle sights. The firing resulted, the court found, in the deaths of 10 prison employees held as hostages and 32 inmates; 33 employees were injured.

Opinions differ as to whether the circumstances called for the use of any fire power.[2] In our view, however, the testimony reveals no instance where one of the hostages was observed by a member of the assault team to be in such imminent danger of being killed as to justify the extreme risk to him and to others of firing under conditions of reduced visibility for the purpose of hitting a threatening inmate at a distance of 100 yards or more. The proof is overwhelming that much of the firing was haphazard and directed indiscriminately at the group of prisoners and hostages in D yard and that most, if not all, of it was unwarranted as a reasonable means of protecting the hostages from harm. Under any conception of the proof, this massive use of fire power directed at the group of inmates and hostages (with the obvious risk to the hostages, some of whom were held as shields for the inmates) cannot have been necessary and cannot be considered to have been the employment of a degree of force that was appropriate or one that was justified by any or all of the existing circum-

**2.** Professor Vernon Fox, founder of the School of Criminology at Florida State University and a recognized authority in the field who, among other things, had been called by the Select Committee on Crime of the House of Representatives to give testimony concerning the Attica riots, stated that in his opinion the force used in retaking the prison was excessive and the use of fire power unnecessary. He outlined alternative techniques which he had employed in successfully securing the release of the 12 hostages taken during the uprising of 2,600 inmates at the State Prison of Southern Michigan in Jackson in 1952. The State's plan, of course, presupposed the existence of circumstances which would justify the use of fire power.

stances. Such a degree of force, we hold, was "more than necessary under all the circumstances" (*Jones v State of New York,* 33 NY2d 275, 280, *supra*). Claimant, we find, has met her heavy burden of proof on this issue (see *Werner v State of New York, supra,* p 352).[3]

The finding that excessive force was employed does not end our analysis. As pointed out, to remove from the State its protection of the exclusivity provisions (Workers' Compensation Law, §§ 11, 29, subd 6) so as to subject it to common-law liability for intentional tort, it must appear that the offending actions were those of the State, i.e., that the conduct of its agents was perpetrated by it or at its direction (*Finch v Swingly,* 42 AD2d 1035, *supra*). On this issue also, we find that claimant has met her burden of proof.

The retaking was carried out as part of a carefully orchestrated plan prepared by officials of the State Police and Department of Correction with the approval of the highest officers in State government. The deployment of the assault team (armed with the above-described weapons and ammunition) for the purpose of retaking the facility was part of that plan as was the instruction that each participating trooper "make the decision to fire based on his own personal judgment that 'an overt act' was in progress that threatened the life of a hostage". Having armed the men and directed them to fire into the crowd whenever in their judgment it was required, the State may not now claim that it was not its intention to wound or kill, for this was the inevitable consequence, and indeed, the very purpose of the firing instructions (see *Finch v Swingly, supra,* p 1035, to the effect that a "result is intended if the act is done[3] * * * with knowledge that to a

---

**3.** It would serve no purpose to recount more fully the evidence pertaining to use of excessive force which the Court of Claims has fully outlined in its 84-page decision. In our opinion, the inescapable conclusion from the 18 volumes of testimony and the hundreds of exhibits is that reached by the McKay Commission and referred to by the court in the *Jones* opinion (*Jones v State of New York, supra,* pp 280-281): "A mountain of facts has been presented by the McKay Commission, a fact-finding body which was established by the Governor subsequent to the revolt. The findings, which were presented in Attica: The Official Report of the New York Special Commission on Attica (Bantam, 1972), indicate that the State troopers' assault was 'marred by excess'. The commission found that the type ammunition used by the troopers presented 'a high risk of injury and death to unresisting inmates and hostages.'"

substantial certainty such a result will ensue [1 Harper and James, Torts, p. 216, § 3.3]").

But Herbert Jones' death, it is argued, did not result from intentional conduct but from accidental injury caused by acts of its agents which, at the very most, constituted recklessness in disregarding known risks — a type of conduct to which the exclusivity provisions (Workers' Compensation Law, §§ 11, 29, subd 6) apply and for which the State claims it cannot be held responsible (see *Orzechowski v Warner-Lambert Co.,* 92 AD2d 110, 113; *Artonio v Hirsch,* 3 AD2d 939, and 2A Larson, The Law of Workmen's Compensation, § 68.13, to the effect that the statutory exclusivity of the workers' compensation remedy applies to all accidental injuries, even those arising from reckless or wanton conduct of the employer). We cannot agree. Here the risk of death or injury by gunfire was not recklessly ignored (see, generally, *People v Leonardo,* 89 AD2d 214, affd 60 NY2d 683, and PJI 2:278, for discussions of components of recklessness) but deliberately created by the State in devising and implementing the plan for retaking the prison by armed assault. Injuries to those subjected to that risk must be held to have been intentionally inflicted.

Finally, the State contends that even if it must be deemed to have intended the preordained consequences of its actions in launching the armed assault (see *Finch v Swingly, supra*), that intent is not enough — claimant must also establish that the State acted with the specific intention of injuring or killing her late husband. In other words, the State would be liable only in the unthinkable event that it had ordered that Jones be singled out and shot — and not otherwise. Not surprisingly, the law is to the contrary. The rule is that in an action for intentional tort, "the wrongdoer will be held responsible for the injuries which he has directly caused even though they lie beyond the limit of natural and apprehended results as established in cases where the injury was unintentional" (*Garrison v Sun Print. & Pub. Assn.,* 207 NY 1, 8). The State, we have *found,* has intentionally used excessive force (see *Jones v State of New York,* 33 NY2d, at p 280) in causing bullets to be fired at the prisoners and the hostages clustered in D

yard. It may not escape responsibility because a bullet which was intended for someone else in the group unintentionally struck and killed Herbert Jones (see Prosser, Torts [4th ed], § 8; Restatement, Torts 2d, § 20, subd [2]; Comment *b; Vandenburgh v Truax,* 4 Denio 464, 466; see, also, *People v Molineux,* 168 NY 264; 6 NY Jur 2d, Assault, § 4, p 198, citing *Baldinger v Banks,* 26 Misc 2d 1086).

The judgment should be affirmed.

CALLAHAN, DENMAN, GREEN and MOULE, JJ., concur.

Judgment and order unanimously affirmed, with costs.